**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 14 2006

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ARKANSAS RIVERVIEW DEVELOPMENT, LLC                    **PLAINTIFF**

v.                                    No. 4-06 CV0000 817

CITY OF LITTLE ROCK and
CAPITOL CITY HOTEL LIMITED PARTNERSHIP              **DEFENDANTS**

**COMPLAINT** This case assigned to District Judge _____
and to Magistrate Judge _____

Plaintiff, Arkansas Riverview Development, LLC, for its Complaint against defendants,

the City of Little Rock and Capitol City Hotel Limited Partnership, states:

1.      This action is brought under 42 U.S.C. §§ 1983 and 1988 to remedy the

deprivation, under color of state law, of rights guaranteed by the Fifth and Fourteenth

Amendments to the United States Constitution, and to recover reasonable costs and attorneys'

fees. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.      Plaintiff also asserts causes of action under statutory and common law of the State

of Arkansas. This Court enjoys supplemental jurisdiction over those claims pursuant to 28

U.S.C. § 1367.

**PARTIES**

3.      Plaintiff Arkansas Riverview Development, LLC is an Arkansas limited liability

company with its principal place of business in Little Rock, Arkansas.

4.      Defendant City of Little Rock is an Arkansas Municipal Corporation with its

principal place of business in Little Rock, Arkansas.

5.      Defendant Capitol City Hotel Limited Partnership is the operator of the Little

Rock, Arkansas Doubletree Hotel and is an Illinois limited partnership registered under the laws

of Arkansas with its principal place of business in Chicago, Illinois.

1

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §
1331 for claims brought under federal law.

7.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the
claims against Capitol City Hotel Limited Partnership because those claims against Capitol City
Hotel Limited Partnership are so related to the claims against the City of Little Rock that they
form part of the same case and controversy.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a
substantial part of the events giving rise to the claims asserted took place in Little Rock,
Arkansas, and the property that is the subject of this action also is located in Little Rock,
Arkansas.

## FACTS

9.     On April 29, 2004, Plaintiff Arkansas Riverview Development, LLC ("ARD")
purchased from the Arkansas Bar Foundation (the "Foundation") a building (the "Building") and
certain real property located at #5 Statehouse Plaza, Little Rock, Arkansas.

10.     At the time of the sale, the Building was constructed partially on real property
owned in fee simple (the "Fee Property") by the Foundation and partially in air rights (the "Air
Rights") owned by the City of Little Rock (the "City"). The Air Rights were leased to the
Foundation under a May 10, 1971 Lease and Agreement (filed of record on May 13, 1971, and
recorded in Book 1345 beginning at Page 146, in the Office of the Circuit Clerk of Pulaski
County, Arkansas) (the "Original Lease"). The Original Lease was amended by a February 20,
1973 Agreement (filed of record on the March 28, 1973, and recorded in Book 1471 at Page 27,
in the Office of the Circuit Clerk of Pulaski County, Arkansas) and extended by the November

2

23, 1994 Extension of Lease (filed of record on December 19, 1994, as Instrument No. 94-85565, in the Office of the Circuit Clerk of Pulaski County, Arkansas). The Original Lease, the 1973 Agreement, and the 1994 Extension of Lease are collectively referred to as the "City Lease."

11.     The Air Rights at issue are located over Garland Street in Little Rock, Arkansas, beginning at 304.0 (MSL Datum).

12.     ARD purchased the Building from the Foundation in April, 2004, for the purpose of remodeling the existing floors and adding five additional floors to develop into a mixed use of residential condominiums and commercial space.

13.     On October 18, 2004, ARD obtained a building permit to renovate the existing building in order to permit the additional construction for the new condominiums, among other things. ARD renovated the building immediately after obtaining the permit.

14.     On August 2, 2005, Ron Boyeskie, a representative of ARD's general contractor, C.B.M. Construction Co., Inc., met with representatives of the occupants of adjacent properties, *i.e.*, the Doubletree Hotel and the Old State House, to discuss the construction project. The occupants of the adjacent properties agreed to the closure of Conway Street to allow for the erection of the additional floors to the Building.

15.     In late August 2005, ARD submitted an application to the City for an additional building permit for the new construction. The application included detailed plans and specifications which clearly showed all aspects of the Building remodeling and new construction, including the to-be-constructed height and other dimensions. The City commented on those plans in a letter dated September 9, 2005, and ARD responded to the City's comments on September 30, 2005. During this time and prior to the submission of plans to the City,

3

representatives of Taggart Foster Currence Gray Architects, Inc., the project design professionals, met with the City's Plans Examiner on several occasions to discuss the plans.

16.     In the fall of 2005, Brad Canada met with the general manager of the Doubletree Hotel to discuss the project. ARD voluntarily made changes to the location of a stairwell and the HVAC equipment to benefit the Doubletree Hotel's view.

17.     On November 2, 2005, Brad Canada (the manager of ARD), Charlie Foster of Taggart Foster Currence Gray Architects, Inc. (ARD's architect) and Mr. Boyeskie met with Mayor Jim Dailey; Director of Public Works Steve Haralson; and City Manager Bruce Moore. In that meeting ARD provided drawings and pictures of the project as constructed, and the entire group toured the project building site.

18.     On November 8, 2005, the City sent a letter to ARD's architect titled "Acknowledgment of Franchise Conditions" which allowed ARD to construct balconies over Garland Street in accordance with approval granted by the Little Rock Board of Adjustment (Z-7944) on October 31, 2005.

19.     During the renovation period and prior to the commencement of construction of the additional floors, Brad Canada met with City Manager Bruce Moore and also with Barry Travis, the then-acting CEO of the Little Rock Advertising and Promotion Commission (the "A & P Commission") to discuss the project.

20.     On January 25, 2006, after review of ARD's permit application and the plans and specifications, ARD obtained Construction Permit No. 200600876 (the "Permit") from the City to begin construction of the additional floors to the Building. Visible construction commenced soon thereafter.

21.     While obtaining financing for the construction project in January 2006, ARD learned that a portion of the building was owned as a leasehold interest and that a portion of the Building was located in the Air Rights. ARD sought and obtained from the Foundation an Assignment of Lease ("Assignment of Lease"), assigning all of the Foundation's rights in and to the lease of Air Rights to ARD, which was effective April 29, 2004 (the date of the original sale) but filed and recorded on February 3, 2006.

22.     During the week of February 7, 2006, Dickson Flake of Colliers Dickson Flake contacted counsel to ARD. Mr. Flake told ARD that he had learned that the Camelot Inn of Little Rock, Arkansas (the "Camelot"), might have had a right of first refusal to the Air Rights.

23.     The Original Lease had included a right of first refusal to the Air Rights to "Camelot Inn- Little Rock, Inc. or its successors in the ownership and operation of the convention center hotel to be constructed over Garland Street west of the premises leased herein."

24.     Capitol City Hotel Limited Partnership (the operator of the Doubletree Hotel) ("CCH") leases the property on which the Doubletree Hotel is located pursuant to a Construct and Lease, Parking and Concession Agreement dated November 2, 1994 (the "Doubletree Lease"), and not pursuant to an extension of a prior lease with Camelot. CCH is not a successor of Camelot, but rather is a subsequent occupant of the space formerly leased to the Camelot. Thus, CCH did not succeed to the Camelot's right of first refusal.

25.     Although the Camelot Inn's right of first refusal was never transferred to CCH, Mr. Flake in fact did offer, on behalf of the Foundation, to sell the property to CCH before offering the property to ARD.

26.     CCH declined to purchase the property.

5

27.     On February 21, 2006, Dickson Flake sent a letter to CCH (attached hereto as Exhibit A and incorporated herein) asking that CCH memorialize its waiver of the alleged right of first refusal by executing a "Relinquishment of Right of First Refusal."

28.     Upon information and belief, CCH refused to sign the Relinquishment of Right of First Refusal, even though it had been offered the chance to buy the property before it was offered to ARD, and instead began working with the City of Little Rock and the A & P Commission to stop the construction of ARD's project.

29.     At the request of the A & P Commission and CCH, representatives of the A & P Commission and CCH met with ARD and its representatives, the Foundation's counsel, and Mr. Flake on April 27, 2006, to provide the A & P Commission and CCH with a tour of the Building and copies of the plans for the project.

30.     Since the April 27, 2006 meeting, ARD and the Foundation have continued their discussions with the A & P Commission, the City, and CCH in an effort to resolve issues in dispute.

31.     On Friday, June 9, 2006, ARD and the Foundation received a letter from the City dated June 8, 2006 (attached hereto as Exhibit B and incorporated herein) demanding that their counsel attend a meeting on the following Tuesday, June 13, 2006. Counsel for ARD, the Foundation, CCH, and the A & P Commission met with City Attorney Tom Carpenter and the A & P Commission Chairman Dan O'Byrne.

32.     At the June 13, 2006 meeting, the parties agreed to attempt to reach a settlement of the various issues. ARD and the Foundation agreed to recommend that their respective clients pay the reasonable attorneys' fees and expenses of CCH, the City, and the A & P Commission up to an amount to be agreed upon for the purpose of continuing the settlement negotiations. CCH,

the City and the A & P Commission agreed to provide proposed fee caps by June 20, 2006. The parties decided that the other issues would be addressed after the fee caps had been agreed upon.

33.    To date, ARD and the Foundation have not received those fee caps as promised to be delivered by the City, the A & P Commission and CCH no later than June 13, 2006.

34.    Late Wednesday afternoon, July 12, 2006, the City provided letter notice of revocation of the Permit (attached hereto as Exhibit C and incorporated herein) without notice or opportunity for ARD to be heard and demanded that all work being conducted pursuant to that Permit immediately cease. The alleged basis of the revocation is that the Permit "does not reflect accurately the owner of all the property in question, and the owner of a substantial portion of the property has not provided permission."

35.    If allowed to stand, the revocation of the Permit will cause irreparable harm to ARD. The project is at a critical construction phase. The interior is not sealed from the elements and the elevator shaft has not been completed. Any rain and wind will likely damage the upper finished floors, existing work-in-progress, materials and equipment, requiring remediation and causing delay and consequential damages of uncertain duration and incalculable scope. On the other hand, reinstatement of the Permit and continuation of the project will cause no additional harm to defendants, if any now exists, because further work will not add any additional burden or encroachment upon defendants' purported property interests.

36.    Although the Original Lease calls for the Foundation to obtain the City's written consent prior to assigning the Air Rights, the City waived any such requirement.

37.    ARD met with the City on numerous occasions prior to construction of the additional floors. City officials reviewed building plans, complete with sketches, and no one representing the City ever suggested the need for the City's written consent of assignment of Air

7

Rights to ARD. By its conduct, the City tacitly approved the Assignment of Lease of the Air Rights by continuing to work with ARD in its construction efforts.

38.     The City not only issued the Permit, but it temporarily closed a city street to allow for the erection of additional floors to the Building – floors that obviously and blatantly occupied space within the Air Rights. The City was fully aware that the plans included building additional floors on top of that portion of the Building that already existed in the space covered by the Air Rights.

39.     On information and belief, it was only when CCH decided that it did not approve of the project did the City insist on a written consent to the Assignment of Lease.

## COUNT I
## Violation of Substantive Due Process

40.     ARD realleges and incorporates all facts appearing in the preceding paragraphs as if set out fully herein.

41.     The City issued the Permit to ARD for additional floors to be built on January 25, 2006.

42.     After the Permit was issued, ARD erected a structure, entered into contracts with contractors, and incurred substantial expense and liability in renovating and improving the Building, all in reliance on the City's conduct in issuing the Permit.

43.     The City observed the construction proceed over many months, and was aware during the entire time that ARD's completed construction would extend into the space covered by the Air Rights.

44.     ARD has a constitutionally protected property interest in the Permit.

8

45. On July 12, 2006, the City abruptly revoked the Permit, stating that the Permit "does not reflect accurately the owner of all the property in question, and the owner of a substantial portion of the property has not provided permission."

46. The City's revocation of the Permit was arbitrary, capricious and without cause or rational basis, and was made in bad faith.

47. The revocation deprived ARD of its constitutionally protected property right.

48. By revoking the Permit, the City violated ARD's right to substantive due process under the Fourteenth Amendment of the Constitution of the United States.

## COUNT II
## Failure to Provide Procedural Due Process

49. ARD realleges and incorporates all facts appearing in the preceding paragraphs as if set out fully herein.

50. ARD has a constitutionally protected property interest in the Permit.

51. The City met with ARD on numerous occasions after ARD began construction on the Fee Property that clearly extended into the Air Rights.

52. The City suddenly, and without cause, revoked the Permit without giving ARD notice or an opportunity to be heard.

53. By revoking the Permit without notice or an opportunity to be heard at a meaningful time and in a meaningful manner, the City violated ARD's right to procedural due process under the Fourteenth Amendment of the Constitution of the United States.

## COUNT III
## Declaration of Valid Assignment of Lease Rights

54. ARD realleges and incorporates all facts appearing in the preceding paragraphs as if set out fully herein.

55.     The City tacitly approved the Assignment of Lease (of Air Rights) by encouraging and assisting ARD in its construction that clearly extended into space covered by the Air Rights.

56.     The Original Lease expressly provided that the City would not unreasonably withhold permission to assign the lease.

57.     By its conduct, the City waived its right to require now that ARD obtain the City's written consent to the Assignment of Lease and is estopped to contend otherwise.

58.     Plaintiff is entitled to a declaratory judgment that the Assignment of Lease is valid.

## COUNT IV
## Quiet Title

59.     Plaintiff realleges and incorporates all facts appearing in the preceding paragraphs as if set out fully herein.

60.     CCH never acquired the right of first refusal because it is not a successor to the Camelot and never obtained the rights in the Original Lease.

61.     In spite of the fact that it had no right of first refusal, CCH was, in fact, offered the opportunity to purchase the property before Plaintiff bought it.  CCH affirmatively chose not to buy the property and has no grounds to assert such a right.

62.     Even if CCH had acquired a right of first refusal, such right is no longer in force and effect because CCH declined the chance to purchase the property.

63.     Plaintiff is entitled to a declaratory judgment that the Assignment of Lease by the Foundation to ARD was a valid assignment and that CCH has no right of first refusal to the property.

10

## PRAYER FOR RELIEF

Plaintiff requests that it be granted:

(1)     Preliminary and Permanent Injunctive relief in the form of immediate

reinstatement of ARD's Building Permit No. 200600876;

(2)     Declaratory judgment pursuant to 28 U.S.C. § 2201 that:

      (i)     Assignment of Lease by the Foundation to ARD was a valid assignment;

      (ii)    The City has consented to the Assignment of the Lease of Air Rights to ARD, through waiver or estoppel, and it may not contend otherwise;

      (iii)   Any claim by the City that it did not consent to the Assignment of Lease by ARD has been waived;

      (iv)    CCH is not entitled to the right of first refusal granted to Camelot;

      (v)     If CCH was entitled to a right of first refusal, CCH has relinquished its right of first refusal when it declined to purchase the property; and

      (vi)    The right of first refusal is no longer of any force and effect.

(3)     Reasonable costs and attorneys fees pursuant to 42 U.S.C. § 1988.

11

WHEREFORE, Plaintiff, Arkansas Riverview Development, LLC, prays that it recover declaratory judgment, injunctive relief, and reasonable costs and attorneys' fees with interest thereon from Defendants, and that it be accorded all other just and proper relief.

WILLIAMS & ANDERSON PLC
111 Center St., 22nd Floor
Little Rock, AR 72201
Telephone: 501/372-0800
Telecopier: 501/372-6453

By: _____
Philip S. Anderson (#60001)
David M. Powell (#69062)
Beth M. Deere (#86050)
D. Nicole Lovell (#2001243)

*Attorneys for Arkansas Riverview Development, LLC*



400 West Capitol Avenue, Suite 1200
Post Office Box 3546
Little Rock, AR 72203
Phone 501.372.6161
FAX 501.372.0671
http://www.colliersdfp.com

February 21, 2006

Mr. Jay Fishman
Capitol City Hotel Limited Partnership
c/o Seymour N. Logan Associates
29 South LaSalle Street, Suite 705
Chicago, Illinois 60603

Dear Mr. Fishman:

In 2003, I contacted you and your Little Rock Doubletree General Manager regarding an opportunity to purchase certain property located at #5 Statehouse Plaza in Little Rock, Arkansas (property adjacent to the Doubletree Hotel). At that time, the offered property was owned by the Arkansas Bar Foundation. You declined to purchase the property, and on April 29, 2004, the property was sold to Arkansas Riverview Development, LLC ("ARD"). The building constructed on the property is built in such a way that it extends over a public right of way (Garland Street). ARD plans to add additional floors above the existing floors.

The reason I am writing is to request that you execute the enclosed relinquishment of the right of first refusal you may have as the successor to the Camelot Inn. The new owner of the property plans to develop the property into condominiums to be sold to third party purchasers and office space to be leased. These third party purchasers will require written evidence that you have relinquished this right of first refusal, and thus, this request for your cooperation.

As you will see from the enclosed Lease and Agreement dated May 10, 1971, the right of first refusal was granted to the Camelot Inn. The right of first refusal only covers those air rights over Garland Street beginning where the bottom of the existing building begins. By declining to purchase the property as a whole, we believe that you have declined your right of first refusal. It is impossible to separate an offer of the Air Rights from an offer of the remaining property as the building is constructed on both.

Dickson Flake, CRE, CCIM, SIOR
k A. Bentley, SIOR
ames Bonner
Denise Bowers, RPA
David B. Carpenter
Karen Carrillo
Marolyn Dorman
Dru E. English, CPM
Karen Fleming

Melanie Gibson, CCIM, CPM
*Phyllis Laser Glaze, CPM
Dana Gray
*Kevin H. Huchingson, CCIM, SIOR
*Gary L. Jon
Karen Kea
Diana G. L
Margaret M
Page McD

Brad Runsick
*Nolan L. Rushing
Thomas J. Rystrom, CPM, CCIM
Leah M. Sears
C. Isaac Smith
Margaret Stevens, CPM
Deann Voss
RINCIPALS

INDIVIDUAL OR CORPORATE MEMBERSHIPS
Building Owners and Managers Association
Counselor of Real Estate
Commercial Investment Institute
Institute of Real Estate Management
International Council of Shopping Centers
Little Rock Board of Realtors, Inc.
National Association of Realtors
Society of Industrial and Office Realtors



Mr. Jay Fishman
Capitol City Hotel Limited Partnership
February 21, 2006
Page 2


We greatly appreciate your prompt attention to this matter. Please feel free to contact me if you have any questions.

Sincerely,

L. Dickson Flake

Enclosure
cc:    Ms. Nicole Lovell





Convention & Visitors Bureau

Robinson Center
•
Statehouse
Convention
Center
•
Visitor Information
Center At
Curran Hall

June 8, 2006

VIA HAND DELIVERY AND
    US MAIL

Arkansas Bar Foundation
Attention: Mr. Barry Deacon, President
400 West Markham
Little Rock, Arkansas 72201

AND

Arkansas Riverview Developments, LLC
Attention: Mr. Brad Canada
5 Statehouse Plaza
Little Rock, Arkansas 72201

RE:        Lease and Agreement, dated May 10, 1971, by and between
the City of Little Rock, Arkansas, as Lessor, and the
Arkansas Bar Foundation, as Lessee, of the Air Rights
above Garland Street, filed for record on the 13th day of
May, 1971 and recorded in Mortgage Book 1345 at Page
152 in the Office of the Circuit Clerk and Ex-Officio
Recorder of Pulaski County, Arkansas, as amended by that
certain Agreement, filed for record on the 28th day of
March, 1973 and recorded in Mortgage Book 1471 at Page
27 in the Office of the Circuit Clerk and Ex-Officio
Recorder of Pulaski County, Arkansas; the Lease and
Agreement and the Agreement being collectively referred
to as the "Lease"

Gentlemen:

The City of Little Rock, Arkansas (the, "City"), as Lessor, and the Arkansas Bar
Foundation (the "Foundation"), as Lessee, made and entered into that certain Lease and
Agreement (the, "Initial Garland Street Air Space Lease"), dated May 10, 1971, filed for
record on the 13th day of May, 1971 and recorded in Book1345 at Page 146 in the Office
of the Circuit Clerk and Ex-Officio Recorder of Pulaski County, Arkansas. Subject to the

June 8, 2006
Page 2

Foundation's continued performance of its obligations under the Initial Garland Street Air Space Lease, the Foundation was vested with a leasehold estate in the air space above Garland Street as therein described with the attendant right to occupy that air space with structures it constructed within that air space under the conditions and for the term set forth in that lease.

The Initial Garland Street Air Space Lease was then amended by that certain Agreement (the, "Amending Agreement"), dated February 20, 1973, filed for record on March 26, 1973 and recorded in Book 1471 at Page 27, made and executed by the City, the Foundation and Camelot Inn-Little Rock, Inc. (the, "Camelot") to amend various agreements, including the Initial Garland Street Air Space Lease, to enable, among other things, the Foundation ". . . to construct certain columns, footings, utility lines and other structural and mechanical appurtenances on land near the new Camelot Inn; and to make available to the Bar Foundation certain air space hereinafter described so its building may abut the east wall of the Camelot Inn building forming the west wall of the Bar Foundation building."

Accordingly, subject to the Foundation's continued performance of its obligations under the Initial Garland Street Air Space Lease and Amending Agreement, the Foundation was vested with a leasehold estate in the air space above Garland Street as therein described (the, "Garland Street Air Space") with the attendant right to occupy that air space with structures it constructed within that air space under the conditions and for the term set forth in the Initial Garland Street Air Space Lease and Amending Agreement.

The Foundation is not vested with fee simple title to that portion of the Bar Foundation Building situated within the Garland Street Air Space. It is a tenant only. Its right to grant another, such as Arkansas Riverview Developments, LLC ("ARD"), the right to occupy and possess the Garland Street Air Space or that portion of the Bar Foundation Building situated within the Garland Street Air Space is dependent upon full compliance by the Foundation with the Initial Garland Street Air Space Lease and the Amending Agreement.

As a threshold matter, the Initial Garland Street Air Space Lease, at paragraph 13, prescribes that:

> "Lessee [Foundation] sic. shall not assign, mortgage or encumber nor sublet or lease the premises or any part thereof without the prior written



June 8, 2006
Page 3

consent of the Lessor [City] sic. in each instance, which consent shall not
be unreasonably withheld."

ARD's occupancy of that portion of the Bar Foundation Building situated within the
Garland Street Air Space violates the Initial Garland Street Air Space Lease and the
Amending Agreement. As acknowledged by ARD's counsel, any attempted sale by the
Foundation of that portion of the Bar Foundation Building situated within the Garland
Street Air Space can only be accomplished by way of an assignment or subletting of the
Foundation's leasehold estate and, under Paragraph 13 quoted above, any such
assignment or subletting and each such assignment or subletting requires the prior written
consent thereto of and by the City.

Neither the Foundation nor ARD sought or obtained the prior written consent of the City,
which consent may only be granted by the affirmative action of the Board of Directors of
the City adopted at a public meeting.

The Foundation cannot deny the existence of the Initial Garland Street Air Space Lease
and the Amending Agreement or the fact that no assignment or subletting by the
Foundation is effective until the Foundation seeks and obtains the City's prior written
consent thereto. Furthermore the deed from the Foundation relied upon by ARD contains
a specific reference to the multiple leases extant including specifically the Amending
Agreement which in turn expressly identifies the Initial Garland Street Air Space Lease.
So ARD constructively, if not actually, knew of the Initial Garland Street Air Space
Lease and the Amending Agreement on the date it contends it purchased the Bar
Foundation Building.

At least ARD admits that it certainly knew by January, 2006 of the fact of the Initial
Garland Street Air Space Lease and the Amending Agreement and, therefore, of the fact
that no assignment or subletting by the Foundation can become effective until the
Foundation seeks and obtains the City's prior written consent thereto.

Yet it appears that, even after ARD admits it learned that any assignment of a right of
possession was dependant on securing the City's prior written consent, ARD prepared an
instrument, entitled Assignment of Lease, sought and obtained the Foundation's
execution thereof with a purported retroactive effective date of April 29, 2004, and then
filed that instrument of record on February 3, 2006, all without ever seeking or securing
the City's consent.



June 8, 2006
Page 4

If ARD's ambition by securing the Foundation's execution of an instrument without first giving formal notice and receiving public approval by the City and which it then recorded, was to surreptitiously cloak itself with authority to occupy the Garland Street Air Space, it has failed. The City of Little Rock does not recognize or consent to ARD's occupancy of the Garland Street Air Space.

In addition to the requirement that the City's prior written consent be sought for any assignment or subletting, the Foundation is reminded that, under the terms of the Initial Garland Street Air Space Lease and the Amending Agreement, the Foundation, among other things, is:

     (1)     prohibited from occupying air space above 427 m.s.l.,

     (2)     prohibited from erecting or allowing the erection of any building or improvement within the Garland Street Air Space, unless the City has given its prior written approval to the same (an action which requires more than approval of a building permit application),

     (3)     required to purchase and maintain a statutory performance bond protecting the premises against lien for labor and materials used in any improvements approved by the City,

     (4)     required (i) to notify the Capital City Hotel Limited Partnership, as successor to the Camelot of all of the terms and conditions of any bona fide offer from ARD and (ii) to give Capital City Hotel Limited Partnership a period of 30 days from mailing certified notice of the terms of that offer from ARD to accept an assignment on the same terms and conditions as those offered by ARD, and

     (5)     required to purchase and maintain public liability insurance with limits of at least $500,000.00 - $2,500,000.00 for bodily injury and $100,000.00 for property damage, naming the City as an insured.

In addition to failing to seek and obtain the City's consent to the contemplated assignment to the ARD, it appears that the Foundation has also violated the aforesaid provisions of the Initial Garland Street Air Space Lease and the Amending Agreement. Pursuant to Paragraph 12 b. of the Initial Garland Street Air Space Lease, the City hereby makes demand upon the Foundation to indemnify the City against any expense of whatever nature it incurs or accrues resulting from the violations of the lease aforesaid as



June 8, 2006
Page 5

well as the attempted assignment, the unauthorized occupancy of the Garland Street Air Space, the unauthorized erection of buildings within the Garland Street Air Space and the unauthorized operations and business activities conducted thereon.

Without waiving any rights or remedies available to it by law or in equity, the City demands that all construction activities within the Garland Street Air Space cease, stop and standstill and that the Foundation and ARD, through its representatives, attend a meeting at 10:00 AM on June 13, 2006 at the offices of Anne Parker, Mitchell Williams Law Firm, 425 West Capital Avenue, Suite 1800, Little Rock, Arkansas, to hear and comply with the City's further demands.

Sincerely,

City Advertising and Promotion
Commission of Little Rock, Arkansas,
as Agent of and from the City
of Little Rock, Arkansas

BY: _____
Daniel E. O'Byrne
Chief Executive Officer

cc.    Mayor Jim Daily
       Director Kumpuris
       Bruce T. Moore
       Thomas M. Carpenter
       Capitol City Hotel Limited Partnership
       Mary Beth Ringgold
       A&P Commission
       Nicole Lovell
       Phillip Anderson
       Gary Garrett





**City of Little Rock**

Bruce T. Moore
City Manager

City Hall, Room 203
500 W. Markham
Little Rock, Arkansas 72201-1427
(501) 371-4510
Fax: (501) 371-4498
www.littlerock.org
citymanager@littlerock.org

July 12, 2006

Arkansas Riverview Developments, LLC
Attention: Mr. Brad Canada
5 Statehouse Plaza
Little Rock, Arkansas 72201

CBM Construction Co.
P.O. Box 17016
North Little Rock, Arkansas 72117

Re:   Lease and Agreement, dated May 10, 1971, by and between the City of Little
      Rock, Arkansas, as Lessor, and the Arkansas Bar Foundation, as Lessee, of the
      Air Rights above Garland Street, filed for record on the 13th day of May, 1971 and
      recorded in Mortgage Book 1345 at Page 152 in the Office of the Circuit Clerk
      and Ex-Officio Recorder of Pulaski County, Arkansas,  as amended by that
      certain Agreement, filed for record on the 28th day of March, 1973 and recorded
      in Mortgage Book 1471 at Page 27 in the Office of the Circuit Clerk and Ex-
      Officio Recorder of Pulaski County, Arkansas; the Lease and Agreement and the
      Agreement being collectively referred to as the "Lease"

Gentlemen:

Please understand that the City has revoked Building Permit No. 200600876. Any work
done pursuant to this building permit is to cease and desist immediately.

The basis for this revocation is that it does not accurately reflect the owner of all the
property in question, and the owner of a substantial portion of the property has not
provided permission. The northern portion of the project is owned by the City of Little
Rock, Arkansas. There is no document that we can find which authorized CBM to
undertake construction on the northern portion, which is the space above Garland
Street, on behalf of the City.

While it is clear that the City, the City Advertising & Promotion Commission, Capitol City
Hotel Limited Partnership, the Arkansas Bar Foundation, and The Residences at
Building 5 (listed as owner for purposes of the building permit), and Arkansas Riverview
Developments, LLC, all wish to see a speedy and successful resolution to the
outstanding issues, until these issues are resolved no building permit will be issued for



property which extends above Garland Street unless and until the Little Rock Board of Directors grants its express approval to do so.


Sincerely,

Bruce T. Moore
City Manager



cc:    Phillip A. Anderson, WILLIAMS & ANDERSON
       Nicole Lovell, WILLIAMS & ANDERSON
       Hal J. Kemp, Esq.
       Anne Owings, MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD
       Gary Garrett, ROSE LAW FIRM
       Thomas M. Carpenter, City Attorney
       Tony Bozynski, Director of Planning & Development

