IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ARKANSAS RIVERVIEW DEVELOPMENT                                              PLAINTIFF

v.                          No. 4:06CV00817 JLH

CITY OF LITTLE ROCK and
CAPITOL CITY HOTEL LIMITED PARTNERSHIP                                      DEFENDANTS

**OPINION AND ORDER**

This action arises out of the City of Little Rock's revocation of a construction permit issued to Arkansas Riverview Development, LLC ("ARD"), for development of the "Residences at Building 5" located at #5 Statehouse Plaza, Little Rock, Arkansas. ARD brings suit under 42 U.S.C. § 1983 against the City of Little Rock under the Fifth and Fourteenth Amendments to the United States Constitution for violations of substantive and procedural due process rights and under Arkansas state law for declaration of valid assignment of rights. It also brings suit against Capitol City Hotel Limited Partnership ("CCH") to quiet title against this party under state law. Before this Court is a motion for preliminary injunction in which ARD asks the Court to order the City to reinstate the permit immediately. The Court conducted an evidentiary hearing on this motion on July 17, 2006, at which ARD appeared through its attorneys, Philip S. Anderson, David M. Powell, and Cassandra P. Baldwin, and its representative, Bradley S. Canada; the City appeared through its attorneys, Thomas M. Carpenter and Beth Carpenter, and its representative, Bruce Moore; and CCH appeared by and through its attorneys, Garland J. Garrett and Meredith B. Switzer. The Court now grants a preliminary injunction in this case and hereby orders the City to reinstate Permit #200600876 until the City shows that it has granted ARD its rights to due process or until this Court issues a final judgment following trial on the merits, whichever occurs earlier.

**Background**

ARD is an Arkansas limited liability company with its principal place of business in Little Rock. On April 29, 2004, it purchased from the Arkansas Bar Foundation a building and real property located at #5 Statehouse Plaza, Little Rock, Arkansas. It then began a two-phase renovation of the existing building and construction of a five-floor upward addition for mixed use as residential condominiums and commercial space.

At the time of purchase by ARD, the existing building was located partially on real property owned in fee simple by the Arkansas Bar Foundation and partially in airspace owned by the City of Little Rock. The airspace in question is located over Garland Street. The Arkansas Bar Foundation leased rights to this airspace from the City pursuant to an original lease executed on May 10, 1971; amended on February 20, 1973; and extended on November 23, 1994 (collectively, "the city lease"). The city lease required the Arkansas Bar Foundation to obtain the City's written consent prior to assigning the rights therein to a third party but states that such consent will not be unreasonably withheld. It also includes a right of first refusal to "Camelot Inn - Little Rock, Inc. or its successors in the ownership and operation of the convention center hotel to be constructed over Garland Street west of the premises leased herein."[1]

In October 2004, C.B.M. obtained a building permit to renovate the existing building in order to permit the upwards construction and, immediately after, began renovation. Ron Boyeskie, a representative of C.B.M. Construction Co., Inc., ARD's general contractor, met with representatives of the occupants of the adjacent properties, the Doubletree Hotel and the Old State House, to discuss

---

[1] The convention center hotel, now owned by the City and operated by CCH as the Doubletree Hotel, adjoins the building on the west.

the project. Occupants of both adjacent properties agreed to the closure of Conway Street to allow for the erection of the additional floors.

In August 2005, C.B.M. submitted to the City an application for a building permit for the upward construction, including in the application detailed plans, specifications, and dimensions of the renovation and new construction. The City commented on the plans. The City's Plans Examiner met with representatives of Taggart Foster Currence Gray Architects, Inc., the project design professionals, on several occasions during and prior to the submission of the plans. In November 2005, representatives of ARD, C.B.M., and Taggart Foster Currence Gray met with Mayor Jim Dailey, City Manager Bruce Moore, and perhaps others. During that meeting, ARD provided the City with drawings and pictures of the project as constructed and the group toured the project site. During the renovation period and prior to commencement of the upward construction, Canada met on occasion with Moore and others to discuss the project.

On November 8, 2005, the City sent to Taggart Foster Currence Gray an Acknowledgment of Franchise Conditions that granted ARD permission to construct balconies over Garland Street in accordance with approval provided by the Little Rock Board of Adjustment on October 31, 2005. On January 25, 2006, after review of ARD's permit application, the City issued Building Permit No. 200600876 ("the permit") for construction of the additional floors. Construction began almost immediately.

While obtaining financing for the construction project in January 2006, ARD learned that a portion of the building was located in airspace leased to the Arkansas Bar Foundation by the City. ARD obtained from the Arkansas Bar Foundation an assignment of the city lease, effective April 29, 2004, and recorded on February 3, 2006. It did not obtain written consent from the City nor did the

Arkansas Bar Foundation offer right of first refusal to CCH.[2] Subsequent to the assignment, CCH refused to sign any relinquishment of the right of first refusal and allegedly began working with the City of Little Rock and the Advertising and Promotion Commission to stop upward construction of the building. Efforts were undertaken by all parties to resolve the issues in dispute. However, on July 12, 2006, the City revoked the permit and demanded that all work pursuant to the permit immediately cease. Letter notice to this effect stated as the basis for the revocation the fact that the permit did not "accurately reflect the owner of all the property in question" and that "the owner of a substantial portion of the property has not provided permission." Specifically, the letter confirmed that the City of Little Rock owned the airspace rights and stated that the City could not find any document authorizing C.B.M. to undertake construction over this space.

**Preliminary Injunction Standard**

A district court has broad discretion to grant or deny a preliminary injunction. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). In making the determination in this case, the Court considers (1) the threat of irreparable harm to ARD; (2) the balance between harm to ARD and injury to other interested parties; (3) the likelihood that ARD will succeed on the merits; and (4) the public's interest in the issuance of an injunction. *Blue Moon Entm't, LLC v. City of Bates City, Mo.*, 441 F.3d 561, 564 (8th Cir. 2006) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). No factor, by itself, is dispositive. *United Indus. Corp.*, 140 F.3d at 1179. "In essence, the inquiry is an equitable one, requiring that [the Court] consider 'whether

---

[2] In 2003, the Arkansas Bar Foundation's real estate broker, Dickson Flake, offered the building to CCH on the same terms as the sale to ARD. ARD contends that CCH's refusal to purchase the building waived any rights it may have as successor to the Camelot Inn. That issue need not be decided today.

the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 370 (8th Cir. 1991) (quoting *Dataphase*, 640 F.2d at 113).

### Threat of Irreparable Harm

The Eighth Circuit repeatedly emphasizes the importance of irreparable harm in the granting of preliminary injunctions. *See e.g.*, *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996) (quoting *Beacon Theatres, Inc., v. Westover*, 359 U.S. 500, 506-07, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). At the hearing, ARD presented satisfactory and ample proof that it will suffer irreparable harm if the City successfully halts construction of the project in its current vulnerable state. Construction of the project is at a critical stage. Both Canada and Boyeskie testified to this effect. Upon revocation of the permit, ARD was within weeks of completing the exterior of the building. As it stands, the building has not been "topped off," the elevator shaft remains unfinished and open, and portions of the interior are exposed to the elements, presenting serious risks of water damage and, in the event of strong summer storms like those recently experienced in Little Rock, flooding. Had the City taken action at an earlier or, perhaps even, later stage of construction, ARD might not face the same threat of irreparable harm. As it is, the threat is palpable and warrants immediate injunctive relief. Furthermore, Boyeskie testified to the harm that occurs when a complex commercial construction project is forced to demobilize and then, later, tries to remobilize. Many of these costs are not readily calculable and are likely never to be recovered. *Cf. Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977) (finding irreparable harm where moratorium ordinance banned operation of

plaintiff's business and thus resulted in adverse business effects and an incalculable loss of revenue).

## Balance of Harms

Perhaps equally important in this case is the balance of harms, weighing soundly in favor of reinstatement of the permit. It is in no one's best interest to shut down construction of the project in its current vulnerable state. CCH and the City vigorously assert rights to the air space where part of the building is located. CCH or the City may end up with ownership interests in the building. It cannot be in either party's interest to expose the building to risk of damage while these rights are sorted out. Just as the City's cease-and-desist order threatens ARD's interests, it threatens any interest that CCH or the City might have in the property. Reinstatement of the permit and completion of the building, meanwhile, protects those interests. No one gains if the building is left unfinished; everyone gains if it is finished so that it can be protected from the elements.

## Likelihood of Success

ARD brings both substantive and procedural due process claims against the City. Proof of the necessity of preliminary injunctive relief requires some showing of likelihood of success on the merits, the strength of which may depend upon the relative strength of the other three factors, especially, threat of irreparable harm. *Dataphase*, 640 F.2d at 113. The Court then, while attempting to avoid deciding with any degree of certainty who will succeed or not succeed, *see Glenwood Bridge*, 940 F.2d at 371, must engage in some meaningful discussion of the probability that ARD could succeed on either of these claims.[3]

---

[3] ARD also brings two state law claims: the first, seeking declaration of a valid assignment of rights against the City; the second, seeking to quiet title against CCH. The Court would decline supplementary jurisdiction over these claims under 28 U.S.C. § 1367 if ARD presented no meritorious federal claim.

**Substantive Due Process**

ARD alleges that the City's revocation of the permit was "arbitrary, capricious and without cause or rational basis, and was made in bad faith" and thus violative of ARD's right to substantive due process under the Fourteenth Amendment of the United States Constitution.

ARD's strongest argument is that the City revoked the permit, not to protect the health, safety, and welfare of the people, but as leverage in bargaining over the airspace rights. The evidence tended to confirm this view. The city manager testified that the permit was revoked because negotiations were stalled and the city need to get things going. The city attorney stated that the City needed to get ARD's attention and "protect our property." While these comments may tend to show an abuse of the police power, they do not satisfy the Eighth Circuit's requirement for proof of a substantive due process violation.

Parties asserting a violation of substantive due process in this circuit are held to a high standard of proof. In *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992), the Eighth Circuit expressly adopted for use in zoning and land-use disputes the substantive due process standard applied by Judge Richard Arnold's concurrence in *Lemke v. Cass County, Neb.*, 846 F.2d 469 (8th Cir. 1987). In *Lemke*, Judge Arnold wrote that in zoning and land-disputes, the plaintiff must allege something more than that the local government decision was arbitrary, capricious, an abuse of discretion, or otherwise in violation of state law. *Lemke*, 846 F.2d at 473. Quoting the reasoning of *Creative Environment, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982), *cert. denied*, 459 U.S. 989, 103 S. Ct. 345, 74 L. Ed. 2d 385 (1982), Judge Arnold reasoned that claims merely alleging arbitrary, capricious, or other such action were better addressed to state courts and administrative bodies because:

7

> Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiff's] characterizations of it and of defendants' alleged mental status, to rise to the level of a due process violation. The authorities cited by [plaintiff], as well as other cases, all suggest that the conventional planning dispute-at least when not tainted with fundamental procedural irregularity, racial animus, or the like-which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not . . . sit as a zoning board of appeals." *Village of Belle Terre v. Boraas*, 416 U.S. 1, 12, 94 S. Ct. 1536, 1542, 39 L. Ed. 2d 797 (1974) (Marshall, J., dissenting). Every appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" and "equal protection" in order to raise a substantial federal question under section 1983. As has been often stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." *Crocker v. Hakes*, 616 F.2d 237, 239 n.2 (5th Cir.1980) (per curiam).

*Id*. The law of this circuit then requires that a plaintiff alleges some "truly irrational" governmental action. *See Id*. at 472; *Chesterfield*, 963 F.2d at 1105. Examples of truly irrational action include the adoption of some ordinance accordingly to the flip of a coin or its application against only persons whose names begins with letters in the first half of the alphabet. *Chesterfield*, 963 F.2d at 1104. Under this standard, however, the Court cannot say that ARD has sufficiently shown a likelihood of success on the substantive due process claim.[4]

---

[4] ARD cites *Planned Parenthood v. Citizens of Community Action*, 558 F.2d 861, in support of their substantive due process claim. At issue in that case was an abridgment of the right to abortion which the Supreme Court has held constitutes a fundamental right under *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 201 (1973). The rights at issue in this case are quite distinct.

**Procedural Due Process**

ARD alleges that it has a constitutionally protected property interest in the permit and that the City revoked the permit without notice or opportunity to be heard, thus depriving it of procedural due process.

The only serious dispute is whether ARD has a property interest in the permit. At this early juncture, it seems to the Court a fairly close question. The parties have cited, and the Court has found, many cases that hold that a property right exists where a building permit was properly issued. *See e.g.*, *Tankersley Bros. Indus., Inc. v. City of Fayetteville*, 227 Ark. 130, 296 S.W.2d 412 (1956). A serious argument is made that the permit was not properly issued to ARD because the permit form did not accurately describe who owned the property. The City argues that ARD should have indicated joint ownership (the City and ARD) on the form where, instead, it indicated sole ownership. On the other hand, a serious argument is made that the City possessed full knowledge of actual ownership based on the City's extensive involvement in the planning process, its review of the plans which showed construction in the airspace over Garland Street, and the visible construction over the airspace at issue. Without ruling on the merits of any of these arguments, the Court is satisfied that ARD makes a sufficiently strong showing of likelihood of success on the procedural due process claim.

**Public Interest**

Public interest strongly favors reinstatement of the permit. As the Court stated before, no one stands to benefit from interruption of the construction at this point. The City of Little Rock and its residents have an interest in seeing this project completed.

**CONCLUSION**

In sum, all factors weigh in favor of granting preliminary injunctive relief in this case. The Court hereby orders reinstatement of the permit until either appropriate procedural due process rights are afforded ARD or until a trial on the merits, whichever occurs first.

The Court further orders ARD to obtain public liability insurance with limits of at least $500,000 for bodily injury and $100,000 for property damage.

The parties are ordered to hold their Rule 26 meeting within one week from the entry of this Order, to discuss an expedited schedule for moving this case toward trial, and to submit an agreed schedule, if agreement can be reached, for trial, with attendant deadlines for discovery cutoff, motions, deadlines, and the like.

IT IS SO ORDERED this   18th    day of July, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE